**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
CARAN B.,                      )
                               )
            Plaintiff,         )
                               )
     v.                        )        1:24CV18
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
            Defendant.[1]      )
```

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Caran B., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 3 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 6 (Plaintiff's Brief); Docket Entry 8 (Commissioner's Brief); Docket Entry 9 (Plaintiff's Reply)). For

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

# I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 201-05), alleging a disability onset date of July 1, 2021 (see Tr. 201, 204). Upon denial of that application initially (Tr. 88-94, 103-07) and on reconsideration (Tr. 95-102, 121-30), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 131-32). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 46-87.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 28-45.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 18-23, 198-200, 301-02), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2026.

2.   [Plaintiff] has not engaged in substantial gainful activity since July 1, 2021, the alleged onset date.

3.   [Plaintiff] has the following severe impairments: rheumatoid arthritis, left knee osteoarthritis, and obesity.

. . .

---

[2] On consent of the parties, "this case [wa]s referred to the [undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 7 at 1.)

2

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with: occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; no exposure to extreme heat, cold, wetness, or humidity; and, no exposure to hazards such as unprotected heights or dangerous machinery with moving mechanical parts.

. . .

6. [Plaintiff] is capable of performing past relevant work as a clerk (general), hair stylist, and manager of a barber/beauty shop. This work does not require the performance of work-related activities precluded by [her RFC].

. . .

7. [Plaintiff] has not been under a disability, as defined in the . . . Act, from July 1, 2021, through the date of this decision.

(Tr. 33-40 (bold font, and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has

3

not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal

4

brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating

_____

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

6

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant]

_____

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

remains able to work other jobs available in the community," the claimant qualifies as disabled.  <u>Hines</u>, 453 F.3d at 567.[6]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of non-disability on these grounds:

1) "the [ALJ] erred as a matter of law by failing to account for any mental limitations in the RFC and by failing to explain why such limitations were not included" (Docket Entry 6 at 7 (bold font, all caps font, and block formatting omitted); <u>see also</u> Docket Entry 9 at 1-5);

2) "the [ALJ] erred as a matter of law by failing to properly consider if [] Plaintiff's severe medically determinable impairment of fibromyalgia equaled Listing 14.09D" (Docket Entry 6 at 16 (bold font, all caps font, and block formatting omitted); <u>see also</u> Docket Entry 9 at 5-7); and

3) "the [ALJ] erred as a matter of law by improperly evaluating the medical opinion of [] Plaintiff's treating provider, [Amanda Shirley, DNP, FNP-C ('NP Shirley'),] including by failing to incorporate limitations from a medical opinion the ALJ found to

_____

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

be persuasive" (Docket Entry 6 at 20 (bold font, all caps font, and block formatting omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (See Docket Entry 8 at 8-25.)

## 1. Mental Limitations in the RFC

In Plaintiff's first issue on review, she argues that "the [ALJ] erred as a matter of law by failing to account for any mental limitations in the RFC and by failing to explain why such limitations were not included." (Docket Entry 6 at 7 (bold font, all caps font, and block formatting omitted); see also Docket Entry 9 at 1-5.) More specifically, Plaintiff maintains that, "[d]espite finding *mild* mental limitations stemming from Plaintiff's . . . mild cognitive impairment, the ALJ's analysis of [] Plaintiff's RFC contains no discussion of Plaintiff's mental limitations." (Docket Entry 6 at 8 (emphasis supplied by Plaintiff) (citing Tr. 34-35).) In that regard, Plaintiff points out that, "when making the RFC determination, the ALJ was obligated to 'consider all limitations and restrictions imposed by all of [Plaintiff]'s impairments, even those that are not severe.'" (Id. at 9 (quoting Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *5 (July 2, 1996) ("SSR 96-8p")).)

9

According to Plaintiff, "since <u>Mascio</u>[ v. Colvin, 780 F.3d 632 (4th Cir. 2015),] was decided, a majority of courts in North Carolina have similarly found that, where an ALJ determines that a claimant suffers from 'mild' or 'moderate' limitations in [the broad areas of mental functioning] and such limitations are unaccounted for in the RFC, or their absence is unexplained in the analysis surrounding the ALJ's RFC determination, remand is required." (<u>Id.</u> at 11 (citing <u>Franklin v. Colvin</u>, No. 5:14CV84, 2016 WL 1724359, at *6 (W.D.N.C. Apr. 29, 2016) (unpublished), <u>Volrath v. Colvin</u>, No. 1:14CV191, 2015 WL 5227818, at *3 (W.D.N.C. Sept. 8, 2015) (unpublished), <u>Jones v. Colvin</u>, No. 4:14CV200, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) (unpublished), <u>Faulkner v. Colvin</u>, No. 1:14CV231, 2015 WL 4603565, at *3 (W.D.N.C. June 12, 2015) (unpublished), <u>recommendation adopted</u>, 2015 WL 4603569 (W.D.N.C. July 30, 2015) (unpublished), <u>Reinhardt v. Colvin</u>, No. 3:14CV488, 2015 WL 1756480, at *3-4 (W.D.N.C. Apr. 17, 2015) (unpublished), and <u>Salmon v. Colvin</u>, No. 1:12CV1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (unpublished) (Biggs, J.)); <u>see also</u> <u>id.</u> at 10 (citing <u>McMichael v. Colvin</u>, No. 1:15CV528, 2016 WL 4556768, at *3-4 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 29, 2016) (Schroeder, J.)).)[7]  In Plaintiff's view, "[t]he ALJ's

_____

[7] Plaintiff cited the <u>Franklin</u> case as "2015 WL 4510238 (W.D.N.C. July 24, 2015)" (Docket Entry 6 at 11), but the district court vacated that decision and later issued another decision remanding on the basis of <u>Mascio</u>, <u>see</u> <u>Franklin v. Colvin</u>, No. 5:14CV84, 2015 WL 5457922, at *6 (W.D.N.C. Sept. 16, 2015) (continued...)

failure to account for mild limitations in the RFC is not harmless" (id. at 15), because the VE testified that "be[ing] off task more than 15 percent of a workday or absent more than one day per month . . . would preclude [an] individual's ability to maintain employment" (id. (citing Tr. 79)), and "the ALJ determined th[at] Plaintiff could perform her past **semiskilled** work as an administrative clerk ([Specific Vocational Preparation ('SVP')] 3) and past **skilled** work as a hairstylist and manager[,] barber/beauty shop (SVP 7)" (id. (emphasis supplied by Plaintiff) (citing Tr. 40)), which involve "an increasing requirement for understanding and memory and for concentration and persistence" (id. (citing Program Operations Manual System ("POMS") § DI 25020.010(B)(4)(b))). For the reasons that follow, those arguments miss the mark.

The United States Court of Appeals for the Fourth Circuit, in finding that an ALJ failed to account for the claimant's moderate limitation in concentration, persistence, or pace ("CPP") in the RFC, held in Mascio that "the ability to perform simple tasks differs from the ability to stay on task," and that "[o]nly the latter limitation would account for a claimant's limitation in

---

    [7](...continued)
(unpublished).

[CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether Mascio applies to mild as opposed to moderate limitations, and to limitations in broad functional areas other than CPP. See Britt v. Saul, 860 F. App'x 256, 262 n.3 (4th Cir. 2021) ("It is unclear whether an [ALJ] must specifically address a claimant's mild impairment in [CPP] in the [RFC] analysis."). Although McMichael and Reinhardt both remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, see McMichael, 2016 WL 4556768, at *3-4 (CPP); Reinhardt, 2015 WL 1756480, at *3-4 (daily activities, social functioning, and CPP), many (more recent) decisions exist to the contrary, see Finley v. Kijakazi, No. 4:22CV1098, 2023 WL 3089922, at *7 (D.S.C. Apr. 26, 2023) (unpublished) ("There is no Fourth Circuit Court of Appeals case finding that 'mild'

12

limitations in CPP must be explained in the RFC; *Mascio* itself related to 'moderate' limitations and 'severe' mental impairments."); Byrd v. Kijakazi, No. 5:21CV527, 2023 WL 2769505, at *6 (E.D.N.C. Jan. 31, 2023) (unpublished) ("[T]he holding in *Mascio* . . . that an ALJ must account for a claimant's *moderate* limitations in [CPP] in the RFC or explain why no limitation is necessary, has not been extended by the Fourth Circuit to *mild* limitations in this functional area . . . ." (emphasis in original)), recommendation adopted, 2023 WL 2760058 (E.D.N.C. Mar. 31, 2023) (unpublished); Carol H. v. Kijakazi, No. 5:20CV35, 2021 WL 3561241, at *12 (W.D. Va. Aug. 12, 2021) (unpublished) ("[I]mportantly, a 'moderate' limitation is greater than a 'mild' limitation, and the Fourth Circuit has not decided whether to extend *Mascio* to those instances in which an ALJ identifies only 'mild' mental limitations . . . ."), recommendation adopted, 2021 WL 4027199 (W.D. Va. Sept. 3, 2021) (unpublished); Martin v. Saul, No. 9:18CV3172, 2020 WL 2813788, at *8 (D.S.C. Jan. 16, 2020) (unpublished) (noting that "most district court decisions [in the Fourth Circuit] have found to the contrary [of cases remanding for ALJ's failure to account for mild limitations in RFC]"), recommendation adopted, 2020 WL 1329395 (D.S.C. Mar. 23, 2020) (unpublished); Morrison v. Berryhill, No. 1:16CV337, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (deeming "[the p]laintiff's heavy reliance on *Mascio* . . . misplaced" and noting

13

that, since "about a month after the Mascio decision," many cases in the Western District of North Carolina "have held that the requirements of Mascio do not necessarily apply where a plaintiff is found to have *mild* limitations in CPP" (emphasis in original)), recommendation adopted, 2018 WL 1308139 (W.D.N.C. Mar. 13, 2018) (unpublished); Thorp v. Berryhill, No. 3:16CV70, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (unpublished) (holding that "case differ[ed] markedly from Mascio," because the plaintiff "had mild difficulties maintaining [CPP]" (emphasis added)); Williamson v. Berryhill, No. 7:16CV284, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on Mascio [] inapt," where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP" (emphasis in original)); Franklin v. Berryhill, No. 1:16CV211, 2017 WL 4274190, at *2-3 (W.D.N.C. Sept. 26, 2017) (unpublished) ("This Court does not interpret Mascio's holding as applying to all restrictions."); Gilbert v. Berryhill, No. 5:16CV100, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of Mascio per se." (emphasis added) (internal quotation marks omitted)); Thompson v. Colvin, No. 1:15CV234, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The Court does not read Mascio to impose a duty on

14

ALJs to automatically or necessarily account for <u>mild</u> limitations in the RFC." (emphasis added)).

The Court finds particularly persuasive a decision from another member of this Court which well-explained the rationale for declining to extend <u>Mascio</u> to <u>mild</u> limitations in the broad functional areas:

> [T]he ALJ made these findings [of mild limitation in CPP] in the course of her discussion at step two of the [SEP], in which she found that [the p]laintiff's mental impairment of depression does not cause more than minimal limitation in the [plaintiff]'s ability to perform basic mental work activities and is therefore nonsevere. This analysis differs from the typical <u>Mascio</u> scenario, in which the ALJ, having already identified one or more mental impairments as severe at step two, then performs a step three evaluation as to whether the degree of functional limitation resulting from [the p]laintiff's mental impairment(s) meets or equals a listed impairment. In that scenario, the resulting <u>Mascio</u> challenge stems from the ALJ's failure, or alleged failure, to include limitations from the [plaintiff's] severe impairments in the RFC.
>
> This distinction is significant. "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). Here, the ALJ found that [the p]laintiff's mental impairment of depression was nonsevere, meaning that it does not cause more than minimal limitation in his ability to perform basic mental work activities. Thus, the ALJ explained why there was no mental limitation in [the p]laintiff's RFC, based on the ALJ's determination that [the p]laintiff's mental impairment did not affect his ability to perform basic

> work activities.  In the circumstances, [the p]laintiff's
> Mascio challenge is without basis.

Brownlee v. Saul, No. 1:18CV642, 2019 WL 3858652, at *7 (M.D.N.C. Aug. 16, 2019) (unpublished) (Peake, M.J.) (certain internal citations, brackets, and quotation marks omitted), recommendation adopted, 2019 WL 4723257 (M.D.N.C. Sept. 26, 2019) (unpublished) (Osteen, J.).  In sum, the weight of post-Mascio authority among the district courts in the Fourth Circuit does not favor extending Mascio to mild limitations in the broad functional areas.

Moreover, even assuming Mascio applies to 1) mild limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), and 2) functional areas other than CPP, Plaintiff has not shown prejudicial error here.  First, Plaintiff does not suggest what additional limitations the ALJ should have included in the RFC to account for her mild limitations in understanding, remembering, or applying information, CPP, and adaptation/self-management.  (See Docket Entries 6, 9.)  That failure precludes relief.  See Carol H., 2021 WL 3561241, at *13 (rejecting the plaintiff's argument that ALJ failed to account for mild mental limitations in RFC, where the plaintiff "did not explain what functional limitations [the] ALJ [] should have included in the RFC"); Humphries v. Colvin, No. 3:15CV376, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (unpublished) (declining relief on similar claim where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record

16

that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, <u>mild</u> limitations' [we]re cause for remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in <u>Mascio</u>] would require for review of 'moderate' limitations in [CPP]" (emphasis added)), <u>recommendation adopted</u>, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Second, the ALJ's step two evaluation cites to substantial evidence to support the lack of mental restrictions in the RFC. The ALJ provided the following analysis to support his findings of <u>mild</u> limitation in understanding, remembering, or applying information, CPP, and adaptation/self-management:

> The first functional area is understanding, remembering or applying information. In this area, [Plaintiff] has mild limitation. [Plaintiff] mentioned memory loss as a concern at a three-month follow-up appointment on October 21, 2022. Her provider administered a mini-mental status exam, which showed <u>mild impairment</u>. This was supposed to be monitored closely at upcoming appointments. It appears the provider brought up the issue again at [Plaintiff's] appointment on January 20, 2023, but there is <u>no indication the mental status exam was repeated</u>. The issue is <u>not mentioned in her February 22, 2023 exam documents</u>. Based on the test results, and the lack of treatment, [Plaintiff] only has a mild limitation in this functional area.
>
> . . .
>
> The third functional area is [CPP]. In this area, [Plaintiff] has a mild limitation. She reported <u>reading and doing puzzles</u>. The only possible indication of a detriment in this area is <u>due to the pain and symptoms from her [r]heumatoid [a]rthritis</u>. Even considering these symptoms, the [ALJ] finds they only cause a mild

limitation. Neither the medical evidence, nor [Plaintiff]'s testimony raise any concerns in this area.

The fourth functional area is adapting or managing oneself. In this area, [Plaintiff] has a mild limitation. She is <u>able to manage her own hygiene and household chores</u>. Her <u>husband physically does assist her when she has a flare-up</u> and has difficulty raising her arms, but there is <u>no indication she needs reminders</u> or any additional assistance for these activities.

Because [Plaintiff]'s medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [Plaintiff]'s ability to do basic work activities, it is non-severe.

(Tr. 34-35 (internal parenthetical citations and underscoring in last paragraph omitted) (emphasis added).)

As the language emphasized above shows, with regard to understanding, remembering, or applying information, the ALJ acknowledged the <u>sole</u> treatment visit in the record at which Plaintiff complained of memory issues, but noted that mental status testing revealed only <u>mild</u> impairment, as well as that Plaintiff did not seek <u>any further treatment</u> of her alleged memory issues. (<u>See</u> Tr. 34.) Additionally, the ALJ noted that Plaintiff had not shown that her mild cognitive impairment caused any limits in her ability to maintain CPP and adapt/self-manage, but accorded Plaintiff the benefit of the doubt in considering the impact of Plaintiff's <u>arthritis pain</u> on her ability to function in those areas. (<u>See</u> Tr. 35.)

18

The above-quoted discussion thus clarifies why, notwithstanding finding Plaintiff <u>mildly</u> limited in understanding, remembering, or applying information, CPP, and adaptation/self-management, the ALJ did not include mental limitations in the RFC. <u>See</u> <u>Britt</u>, 860 F. App'x at 262 ("The discussion in step-two that the[] limitations [from non-severe impairments] had a minimal impact on vocation and were being managed tells us what impact these limitations had in the [RFC] analysis. We can conduct a meaningful review without making an [ALJ] repeat himself."); <u>Ramona</u> <u>A. v. Kijakazi</u>, No. 5:20CV66, 2022 WL 993559, at *6 (W.D. Va. Mar. 31, 2022) (unpublished) ("The ALJ considered whether [the plaintiff]'s anxiety caused functional limitation[ and ] found that [the plaintiff]'s non-severe anxiety caused 'no more than "mild" limitation in any of the functional areas <u>and</u> the evidence d[id] not otherwise indicate that there [wa]s more than a minimal limitation in [her] ability to do basic work activities.' Thus, it is a misreading of the ALJ's decision to assert that her step two determination found functional limitations that should have been included in the RFC." (emphasis in original) (internal parenthetical citation omitted)).

Third, the ALJ's discussion of the opinion evidence lends further support to the omission of mental restrictions in the RFC to account for mild deficits in understanding, remembering, or applying information, CPP, and adaptation/self-management.

19

Notably, despite obtaining a detailed opinion from NP Shirley regarding the impact of Plaintiff's underline(physical) impairments on her ability to function (Tr. 416-19), she did not provide any opinions from her treating sources regarding limitations caused by a mental impairment. Moreover, because Plaintiff did not include any mental impairments in the list of impairments she considered disabling in her application materials (underline(see) Tr. 218 (listing only underline(rheumatoid arthritis)); underline(see also) Tr. 53 (attorney's opening statement asserting that Plaintiff's underline(rheumatoid arthritis, fibromyalgia, neuropathy, and bursitis) disabled her), 61 (Plaintiff's testimony that underline(chronic pain and stiffness) in her joints, legs, knees, shoulders, hands, and fingers kept her from working), 292 (statement from Plaintiff's husband discussing his assistance during Plaintiff's underline(rheumatoid arthritis) flares and not mentioning mental impairment)), the state agency consultants, whose opinions the ALJ found "persuasive" (Tr. 39), did not even find that Plaintiff had a medically determinable mental impairment, let alone assess her mental RFC (underline(see) Tr. 89-94, 96-102).

Accordingly, the ALJ's decision provides an "accurate and logical bridge," underline(Woods v. Berryhill), 888 F.3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted), between the ALJ's findings of mild limitations in understanding, remembering, or applying information, CPP, and adaptation/self-management at step two of the SEP and the RFC. Coordinately, because the Court can

20

meaningfully review the ALJ's omission of mental limitations in the RFC, the Court also finds supported by substantial evidence the ALJ's adoption of the VE's testimony (see Tr. 40) that an individual with Plaintiff's non-mentally-limited RFC can perform her semi-skilled and skilled PRW (see Tr. 76-77).[8]

Given these considerations, Plaintiff's first assignment of error fails as a matter of law.

## 2. Evaluation of Fibromyalgia

Next, Plaintiff contends that "the [ALJ] erred as a matter of law by failing to properly consider if [] Plaintiff's severe medically determinable impairment of fibromyalgia equaled Listing 14.09D." (Docket Entry 6 at 16 (bold font, all caps font, and block formatting omitted); see also Docket Entry 9 at 5-7.)[9] In that regard, Plaintiff maintains that "the ALJ failed to follow [Social Security Ruling 12-2p, Titles II and XVI: Evaluation of Fibromyalgia, 2012 WL 3104869 (July 25, 2012) ('SSR 12-2p'),]" which provides that a "claimant can show a medically determinable

_____

[8] The Court notes that Plaintiff testified that she left her last job not because of any mental limitations, but because her husband had retired and they decided to relocate to North Carolina. (See Tr. 62; see also Tr. 215, 218 (Plaintiff's assertion in application materials that she stopped working on February 26, 2021, because of relocation).)

[9] Despite the heading of Plaintiff's second issue on review faulting the ALJ for "failing to properly consider if [] Plaintiff's severe medically determinable impairment of fibromyalgia equaled Listing 14.09D" (Docket Entry 6 at 16 (bold font, all caps font, and block formatting omitted)), Plaintiff thereafter made no attempt to argue how her fibromyalgia medically equaled the criteria of Listing 14.09D, arguing instead that the ALJ erred at step two of the SEP by failing to properly evaluate whether Plaintiff's fibromyalgia qualified as a severe, medically determinable impairment (see id. at 16-20). The undersigned thus will not consider Listing 14.09D further.

impairment of fibromyalgia by demonstrating: (1) a diagnosis from an acceptable medical source and (2) evidence from that source that satisfies either the 1990 American College of Rheumatology Preliminary Diagnostic Criteria [sic] for fibromyalgia . . . or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria for fibromyalgia." (Docket Entry 6 at 18 (citing SSR 12-2p, 2012 WL 3104869, at *2-3).) Plaintiff faults the ALJ for "only discuss[ing] whether [] Plaintiff met the 1990 [c]riteria, . . . [and] never consider[ing] whether the 2010 [c]riteria were met." (Id. (referencing Tr. 34).) Plaintiff further contends that, "[b]ecause the ALJ applied the incorrect standard, it seems the ALJ confusingly found that [] Plaintiff's fibromyalgia was a non-severe medical impairment before then finding that the fibromyalgia was not a medically determinable impairment[, but] . . . did not cite any evidence or provide any explanation for his finding that [] Plaintiff's fibromyalgia was non-severe." (Id. at 19 (citing Tr. 34).) Those arguments fall short.

"At step 2 of the [SEP], [the ALJ] determine[s] whether an individual has a severe medically determinable physical or mental impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least 12 months or end in death." Social Security Ruling 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at

22

*11 (Oct. 25, 2017) ("SSR 16-3p") (emphasis added). The Commissioner's regulations provide that a medically determinable impairment "must result from anatomical[ or] physiological . . . abnormalities that can be shown by <u>medically acceptable clinical and laboratory diagnostic techniques</u>[ and] . . . must be established by <u>objective medical evidence</u> from an acceptable medical source." 20 C.F.R. § 404.1521 (emphasis added).[10] Furthermore, an ALJ cannot rely on a claimant's own "<u>statement of symptoms, a diagnosis, or a medical opinion</u> to establish the existence of a[ medically determinable] impairment[ ]." <u>Id.</u> (emphasis added).[11]

With regards to fibromyalgia in particular, SSR 12-2p provides "two sets of criteria for diagnosing [fibromyalgia]," . . . the

---

[10] The regulations define "objective medical evidence" as "laboratory findings" and/or "signs," i.e., "abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 404.1502(f), (g).

[11] Applicable to benefits claims filed on or after March 27, 2017 (such as Plaintiff's DIB claim (<u>see</u> Tr. 201-05)), the SSA amended the section governing the establishment of medically determinable impairments. <u>See</u> <u>Revisions to Rules Regarding the Evaluation of Medical Evidence</u>, 82 F.R. 5844-01, 5868-69, 2017 WL 168819 (Jan. 18, 2017). Prior to those amendments, an ALJ considered medical signs, laboratory findings, and a <u>claimant's own statements</u> to determine the presence of a medically determinable impairment. <u>See</u> 20 C.F.R. § 404.1508 (version effective prior to Jan. 18, 2017). The amendments recodified the rule at Section 404.1521 and now preclude ALJs from considering a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of a[ medically determinable] impairment[]." 20 C.F.R. § 404.1521; <u>see also</u> <u>SB v. Commissioner of Soc. Sec. Admin.</u>, No. CV-20-1842, 2021 WL 5150092, at *4 (D. Ariz. Nov. 5, 2021) (unpublished) ("To the extent that [prior district court and appellate cases within the Ninth Circuit] hold that medical opinions and diagnoses are relevant to determine an impairment at step two, that has been expressly foreclosed by the text of § 404.1521. Instead, as discussed above, the [c]ourt finds that only the objective medical evidence in [the p]laintiff's medical records can be relevant to whether she had a medically determinable impairment . . . ." (internal citation omitted)).

1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia [('1990 ACR Criteria')] . . . [and] the 2010 ACR Preliminary Diagnostic Criteria [('2010 ACR Criteria')]." SSR 12-2p, 2012 WL 3104869, at *2. Under the 1990 ACR Criteria, an ALJ "will find that a person has a[ medically determinable impairment] of [fibromyalgia] if the [person's] physician diagnosed [fibromyalgia] and . . . he or she has all three of the following:

> 1. A history of widespread pain . . . in all quadrants of the body . . . and axial skeletal pain . . . that has persisted for at least 3 months[, but] . . . may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination . . . bilaterally . . . and both above and below the waist.
>
> . . .
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded."

Id. at *2-3.

In turn, pursuant to the 2010 ACR Criteria, an ALJ "will find that a person has a[ medically determinable impairment] of [fibromyalgia] if the [person's] physician diagnosed [fibromyalgia] and . . . he or she has all three of the following criteria:

> 1. A history of widespread pain [as defined above];
>
> 2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

24

3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

Id. at *3 (footnotes and internal parenthetical citation omitted).[12]

The ALJ here offered the following analysis of fibromyalgia at

step two of the SEP:

While [Plaintiff ] complained of fibromyalgia, I note that the [ACR] has established the following criteria for the classification of fibromyalgia: a history of widespread pain and pain in 11 of 18 tender point sites on digital palpation. Pain is considered widespread when all of the following are present: pain in the left side of the body; pain on the right side of the body; pain above the waist; and pain below the waist. For a tender point to be positive, [Plaintiff] must state that the palpation was painful and not merely tender. Although [Plaintiff]'s doctor stated she had fibromyalgia, there is no evidence in the record that she has ever met the required criteria for the diagnosis of fibromyalgia. There is no evidence that [Plaintiff] has ever suffered from 11 positive trigger points upon palpation. Accordingly, [the ALJ] find[s] that [Plaintiff]'s impairment of fibromyalgia is non-severe.

(Tr. 34 (emphasis added).)

That analysis by the ALJ contains three separate errors.

First, if the ALJ found that Plaintiff's evidence failed to meet

the "required" criteria for fibromyalgia (id.), then the ALJ should

_____

[12] SSR 12-2p identifies the following as fibromyalgia "[s]ymptoms and signs": "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2p, 3104869, at *3 n.9. Coordinately, that Ruling lists the following as examples of "co-occurring conditions": "anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome." Id. at *3 n.10.

have found fibromyalgia a non-medically determinable impairment, rather than finding it a "non-severe" impairment (id.). Second, in light of SSR 12-2p's alternative reliance on the 2010 ACR Criteria, which do not require tender point evidence to establish fibromyalgia as a medically determinable impairment, see SSR 12-2p, 3104869, at *3, the ALJ additionally erred by characterizing tender point evidence as a "required" criteria to establish fibromyalgia as an impairment (Tr. 34). Third, the ALJ erred by not expressly discussing whether Plaintiff's fibromyalgia met the requirements of the 2010 ACR Criteria. (See id.) However, for the reasons more fully explained below, those errors qualify as harmless under the circumstances presented here.

The ALJ's error in deeming fibromyalgia non-severe rather than non-medically determinable did not prejudice Plaintiff, because that finding inures to Plaintiff's benefit. The ALJ must consider the effects of non-severe impairments during the remaining steps of the SEP, see SSR 96-8p, 1996 374184, at *5 (requiring ALJ to "consider limitations and restrictions imposed by all of a claimant's impairments, even those that are not severe"), but need not consider the impact of non-medically determinable impairments, see Toney v. Berryhill, No. 9:17CV80, 2018 WL 4090630, at *4 (D.S.C. Aug. 28, 2018) (unpublished) (explaining that, "in assessing [RFC], the [ALJ] considers only medically determinable impairments," and that, "because the ALJ concluded that [the

26

plaintiff] did not have a medically determinable impairment of fibromyalgia, it would have been improper to consider it in the RFC calculation" (emphasis in original) (citation and internal quotation marks omitted)).

Moreover, the ALJ's failure to expressly discuss the 2010 ACR Criteria qualifies as harmless error, because Plaintiff has entirely failed to point to evidence that she meets those Criteria.[13] Although NP Shirley listed "[f]ibromyalgia" among Plaintiff's diagnoses in NP Shirley's functional capacity opinion (see Tr. 416), NP Shirley's treatment records neither list fibromyalgia in Plaintiff's medical history nor as a current diagnosis and fail to reflect any treatment for fibromyalgia (see Tr. 334-48, 358-408, 423-42). Thus, Plaintiff has arguably not even shown the threshold requirement that her "physician diagnosed [fibromyalgia]," SSR 12-2p, 3104869, at *2. Beyond that omission, Plaintiff has neither provided evidence of "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions," id. at *3, nor shown "that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded," id. Indeed, the record documents that blood tests confirmed a diagnosis of rheumatoid arthritis (see Tr. 306 (referencing positive cyclic

---

[13] Indeed, Plaintiff's counsel at the hearing conceded that Plaintiff had not undergone any "testing that comports with SSR 12[-]2[p]" to confirm a diagnosis of fibromyalgia. (Tr. 54.)

citrullinated peptide ("CCP") test)), and that Plaintiff received extensive treatment for that disease (see Tr. 305-18, 334-48, 358-408, 423-42).

Put simply, Plaintiff has not established that the ALJ prejudicially erred by finding Plaintiff's fibromyalgia a non-severe impairment and thus her second issue on review lacks merit.

### 3. Opinions of NP Shirley

Plaintiff's third and final assignment of error maintains that "the [ALJ] erred as a matter of law by improperly evaluating the medical opinion of [] Plaintiff's treating provider, [NP Shirley,] including by failing to incorporate limitations from a medical opinion the ALJ found to be persuasive." (Docket Entry 6 at 20 (bold font, all caps font, and block formatting omitted).) In particular, Plaintiff contends that "the ALJ explicitly rejected specific limitations assessed by [NP Shirley]," and that "th[o]se rejected limitations [we]re the reason the ALJ found [NP Shirley's] opinion to only be 'partially' persuasive." (Id. at 21 (quoting Tr. 39).) According to Plaintiff, because the ALJ did not expressly reject NP Shirley's opinion that Plaintiff's impairments limited her to three total hours of sitting and two total hours each of standing and walking, "reasonable minds would conclude that th[ose limitations] . . . were included in the portion of the opinion the ALJ deemed to be persuasive." (Id. (referencing Tr. 416).) Plaintiff thus asserts "that the ALJ erred by not including

28

[NP Shirley's sitting, standing, and walking] limitation[s] in the RFC." (Id. at 21-22.) As the following analysis shows, those contentions do not establish prejudicial error by the ALJ.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 201-05)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the persuasiveness of such opinions "together in a single analysis" and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors" and

thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2).[14] The ALJ must address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 404.1520c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

NP Shirley completed a preprinted form dated February 10, 2023, and entitled "Treating Physician Medical Opinion of Ability to Do Work-Related Activities - Physical," on which she opined that Plaintiff's "[r]heumatoid arthritis, [f]ibromyalgia, [and n]europathy" (Tr. 416) limited Plaintiff to sitting no more than 20 minutes at a time and for three hours total, standing and walking each no more than 10 minutes at a time and for two hours total, and lifting and carrying no more than five pounds (see Tr. 416-17). NP Shirley further stated that Plaintiff's physical impairments caused additional postural, manipulative, and environmental limitations (see Tr. 417-18), as well as elevation of her legs above waist

_____

[14] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

level for more than two hours but less than four hours per day, unscheduled breaks of 10 to 15 minutes' duration eight to 12 times per day, and absence from work more than four days per month (see Tr. 419).

The ALJ summarized NP Shirley's above-described opinions (see Tr. 39), and thereafter provided the following persuasiveness analysis:

> [The ALJ] find[s NP Shirley's] assessment partially persuasive as [NP] Shirley is [Plaintiff]'s primary care provider and has the benefit of a longitudinal treating relationship with [Plaintiff]. [The ALJ] do[es] not find [NP Shirley's] assessment of fibromyalgia as a severe impairment to be persuasive as there is no documentation that [NP] Shirley's exams included objective testing for this condition. The need to elevate her feet is not persuasive as not only is this is [sic] not listed in the medical evidence of record, but it is also inconsistent with reports of overall normal exams. The assessment that [Plaintiff] would miss 4 days of work a month is not supported by the record, especially the implied activities of cooking, cleaning, and performing household chores from [Plaintiff's husband's] Third Party Function [R]eport. The assessment that [Plaintiff] is 'not capable of the sustained effects of a workplace environment' is not persuasive as this is a vague statement and an issue reserved for the Commissioner. Finally, the limitation to exposure to pulmonary irritants is not persuasive as this is not supported by the objective medical evidence.

(Id. (emphasis added).) As explained in more detail below, Plaintiff's challenge to that analysis fails.

Plaintiff's contention that the ALJ's finding NP Shirley's opinions "partially persuasive" (id.) followed by the ALJ's failure to expressly reject NP Shirley's sitting, standing, and walking limitations (see id.) would lead "reasonable minds [to] conclude

31

that th[ose limitations] . . . were included in the portion of the opinion the ALJ deemed to be persuasive" (Docket Entry 6 at 21) proceeds from a faulty premise.  The ALJ's RFC contains NP Shirley's limitation to occasional balancing and preclusion of exposure to extreme heat, cold, wetness, humidity, and hazards (compare Tr. 37, with Tr. 417-18), which explains why the ALJ found NP Shirley's opinions "partially persuasive" (Tr. 39) as opposed to "not persuasive."  Moreover, the ALJ found "persuasive" the opinions of the state agency medical consultants (id.), who each found that Plaintiff remained able to sit, stand, and walk for up to six hours in an eight-hour workday (see Tr. 92, 99-100).  In making that persuasiveness finding, the ALJ expressly stated that, "[w]hile [Plaintiff] testified that she required greater limitations, this is not supported by the objective evidence." (Tr. 39 (emphasis added).  It would make little sense for the ALJ to fully credit the consultants' opinions that Plaintiff can sit, stand, and walk for up to six hours and then also find persuasive NP Shirley's opinion limiting Plaintiff to only three hours of sitting and only two hours each of standing and walking.  Thus, the Court declines to interpret the ALJ's analysis of NP Shirley's opinions in the unreasonable and contradictory manner suggested by Plaintiff.  See Owens v. Kijakazi, No. 22-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023) (unpublished) (holding that no "categorical rule [exists] that requires an ALJ to specifically

reject every limitation contained in a report the ALJ has discussed and found to be only partially or somewhat persuasive, so long as the reviewing court can ascertain the basis for the ALJ's findings," as well as that "[t]he driving consideration is whether the ALJ's analysis allows for meaningful judicial review").

In sum, the ALJ's decision permits the Court to trace the path of the ALJ's reasoning in finding NP Shirley's opinions partially persuasive, and, thus, Plaintiff's third issue on review fails to establish a basis for reversal or remand.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 8, 2025